# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 12-cr-0271 (DSD/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Harold Duane Davenport, | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the undersigned United States Magistrate Judge for a pretrial motion hearing on January 3, 2013. Nathan P. Petterson appeared on behalf of the United States of America, and Manvir K. Atwal appeared on behalf of Defendant Harold Duane Davenport. With the Court's leave, Defendant filed a post-hearing memorandum on January 10, 2013, and the Government filed a post-hearing memorandum on January 11, 2013. The Court took the motions under advisement at that time. This case was referred to this Court for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The Court will address Defendant's Motion to Suppress Evidence Obtained from Search and Seizure (ECF No. 19) and Defendant's Motion to Suppress Statements, Admissions, and Answers (ECF No. 20) in this Report and Recommendation. The parties' non-dispositive motions will be addressed in a separate Order.

## I.    BACKGROUND

### A.    The Search Warrant

On August 19, 2011, Detective Todd Waldron of the Le Sueur County Sheriff's Office applied for a search warrant for Defendant's residence. (Gov't Ex. 2.) He averred the following

facts in the supporting affidavit.

In May 2010, Homeland Security Investigations (HSI) began investigating the online sexual abuse of children in the Philippines. HSI learned from an individual named Philip Baker that he had paid $25 through a money transfer company, Xoom, to access a webcam with which he could watch and direct live child pornography. Investigators subsequently issued a summons for Xoom's records and learned of numerous individuals around the world who had paid money to people in the Philippines to access similar webcams. One such individual was Brian Warren. Investigators sought and obtained a search warrant for Warren's home, and records seized from the home contained evidence of 24,000 monetary transactions for child pornography from 40 individuals, including Harold Davenport. Investigators issued another summons to Xoom, seeking information for all 24,000 transactions.

The transaction records provided by Xoom included eight separate occasions on which Defendant, using his real name, paid money to an individual in the Philippines through Xoom, using either a credit card or a PayPal account. The records were linked to Defendant's home address, 358 North Cordova Avenue, Le Center, Minnesota; telephone numbers, 507-357-4167 and 612-210-0413; and email address, hdavenport@hotmail.com. The eight transactions ranged from $25 to $50, and three of the eight transactions were paid to a woman named Roalina Nunez. A suspect in Connecticut told HSI investigators on June 6, 2011, that he had purchased live child pornography from Nunez over a webcam and through Xoom.

On June 8, 2011, an HSI investigator served an administrative subpoena on Frontier Communications for the phone number 507-357-4167. Frontier Communications identified the subscriber as Harold Davenport. On June 14, 2011, an HSI investigator served an administrative subpoena on msn.hotmail for the email address hdavenport@hotmail.com. Information obtained

pursuant to the subpoena identified Harold Davenport as the account owner and 612-210-0413 as the device address. In addition, the registered IP address matched the one HSI had on file for Defendant. Further investigation confirmed that Harold Davenport lived at 358 Cordova Avenue in Le Center, Minnesota, and that this address was provided for the credit card and PayPal purchases from the Philippines.

HSI Investigator Tonya Price contacted Detective Waldron and advised him of the above information, all of which Detective Waldron relayed in his affidavit. In addition, Detective Waldron swore to his knowledge that computers and the Internet are common tools for individuals to obtain and view sexual images of children, and that the transportation of child pornography can be verified by examining the recipient's computer and Internet history. Detective Waldron also averred that recipients of child pornography frequently store the images on their computers and other storage devices and share the images with others over the Internet.

In light of the above, Detective Waldron applied for a warrant to search Defendant's residence for evidence of child pornography and sexual exploitation of children. A Le Sueur County District Judge signed the search warrant on August 19, 2011. The application, affidavit, search warrant, receipt, inventory, and return were introduced at the motion hearing as Government's Exhibit 2.

### B. The Search of Defendant's Residence and Defendant's Statement

On August 24, 2011, at 9:30 a.m., Agent Price, Detective Waldron, and four other law enforcement officers arrived at Defendant's residence to execute the search warrant. Defendant was at work when the officers arrived, so Detective Waldron called Defendant on his cellular phone and informed him of the warrant. Defendant told Detective Waldron there was not a key outside the home to allow officers to gain entry to the residence before he arrived home. Thus,

the officers forcibly entered the home through the garage door and another door. The officers were concerned that Defendant might attempt to access his computer remotely and destroy evidence, and after the officers entered the house, they immediately disconnected the computer from the Internet. At some point, Defendant's significant other arrived at the residence and appeared very upset. Agent Price asked her to wait in the garage during the search. The search ended about 1:30 p.m.

Defendant arrived at the residence at about 12:45 p.m., and he was interviewed by Agent Price and Detective Waldron in the dining room about thirty minutes later. Defendant was not handcuffed or otherwise restrained, but Detective Waldron told Defendant he was in custody and not free to leave. Detective Waldron advised Defendant of his *Miranda* rights, which Defendant said he understood and waived. Defendant never asked for an attorney or indicated he wanted to stop talking, and he was fully cooperative throughout the interrogation. The officers made no threats or promises. The interview lasted approximately fifteen minutes, and Defendant was placed under arrest at the conclusion of the interview. A transcript of the interview was introduced at the motion hearing as Government's Exhibit 1.

### C. The Charges

Defendant was indicted on November 5, 2012, with one count of Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

## II. DISCUSSION

### A. The Search Warrant

Defendant does not identify any particular deficiency with the search warrant or its execution, but simply asks the Court to review the four corners of the supporting affidavit for

probable cause. (Def.'s Mem. Supp. Mots. Suppress at 2, ECF No. 25.)

The probable cause standard is a "practical, nontechnical concept[]." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). The duty of the judge who signs the warrant is "to make a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The affidavit must establish a "nexus . . . between the item to be seized and criminal behavior." *Warden v. Hayden*, 387 U.S. 294, 307 (1967). There must also be a nexus between the contraband and the place to be searched. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). In reviewing a search warrant for probable cause, the Court must give "great deference" to the issuing court's original determination. *Gates*, 462 U.S. at 236 (citation omitted). If the issuing judge relied solely on the affidavit in assessing probable cause for the warrant, the reviewing court may consider "only that information which is found within the four corners of the affidavit . . . in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982).

Here, the Court finds that Detective Waldron's affidavit established probable cause for the search warrant. Detective Waldron outlined the HSI's worldwide investigation of people paying to view live sexual abuse of children in the Philippines, and he meticulously traced the investigation to Defendant though Xoom's records. Those records contained evidence of eight separate transactions to individuals in the Philippines. Detective Waldron linked Defendant's home address, telephone numbers, email address, and credit card information to the Xoom transfers, and linked three transfers directly to an individual in the Philippines suspected of transmitting live child pornography over the Internet. Detective Waldron established the necessary nexus between the suspected criminal activity and Defendant's computers, electronic

storage devices, and related items. Detective Waldron also established a nexus between the items to be seized and Defendant's residence. In sum, there was a fair probability that contraband or other evidence of child pornography or sexual exploitation of children would be found in Defendant's home, and Defendant's Motion to Suppress Evidence Obtained from Search and Seizure should be denied.

### B. The Statement

Defendant asks the Court to review his *Miranda* waiver for voluntariness. (Def.'s Mem. Supp. Mots. Suppress at 2.)

The Fifth Amendment privilege against self-incrimination requires a law enforcement officer to advise a person of his or her *Miranda* rights before interrogating the individual in a custodial setting. *Illinois v. Perkins*, 496 U.S. 292, 296 (1992). Before a statement procured through custodial interrogation can be admitted in court, the Government must demonstrate that a defendant's waiver of his *Miranda* rights was made intelligently, knowingly, and voluntarily. *Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966). The Court's assessment of the waiver has two components. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the waiver must have been "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Second, the individual must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* In analyzing the second element, the Court considers factors such as the person's background, experience with the criminal justice system, and conduct near the time of the interview. *See Stumes v. Solem*, 752 F.2d 317, 320 (8th Cir. 1985).

In the case at hand, the Court finds that Defendant freely and deliberately waived his *Miranda* rights. Defendant spoke willingly and cooperatively with Detective Waldron, and there

was no intimidation, coercion, or deception. From Defendant's acumen with computers, his employment at the Wells Fargo Operations Center, and his cogent answers to Detective Waldron's questions (*see* Gov't Ex. 1), the Court finds that Defendant is intelligent and was fully capable of understanding his rights and the consequences of waiving them. Although Defendant's experience with the criminal justice system is not known, his background and conduct during the interview are consistent with a voluntary waiver. Therefore, the Court finds that Defendant's *Miranda* waiver was voluntary and recommends that his Motion to Suppress Statements, Admissions, and Answers be denied.

### III. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained from Search and Seizure (ECF No. 19) be **DENIED**; and

2. Defendant's Motion to Suppress Statements, Admissions, and Answers (ECF No. 20) be **DENIED**.


Dated: January 15, 2013                    s/ *Jeanne J. Graham*
                                           JEANNE J. GRAHAM
                                           United States Magistrate Judge


### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **January 30, 2013**. A party may respond to the objections within fourteen (14) days of the objections being filed. Any objections or responses filed under this rule shall not exceed 3,500 words. The district

judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the district judge is not required to review a transcript of the hearing in order to resolve the objections, the party making the objections shall timely order and cause to be filed within fourteen (14) days a complete transcript of the hearing.